No. 97-050

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

STATE OF MONTANA,

Plaintiff and
Respondent,

v.

ED ROY
SIDMORE,

Defendant and Appellant.

APPEAL FROM:       District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C.B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Lane K. Bennett, Kalispell, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Cregg W. Coughlin, Assistant
Attorney General, Helena, Montana; Kim Christopher, Lake County
Attorney, Robert J. Long, Deputy Lake County Attorney, Polson, Montana

Submitted on Briefs: October 30, 1997

Decided:    December 18, 1997
Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.


Ed Roy Sidmore (Sidmore) appeals from a jury trial conviction of felony DUI, fourth offense, and from rulings made by the Twentieth Judicial District Court, Lake County, denying his motions to dismiss the charge of felony DUI, fourth offense. We reverse and order the felony charges against Sidmore to be dismissed.

Sidmore raises the following issues on appeal:

1.    Did the District Court err in denying his motion to dismiss for lack of jurisdiction related to the use by the State of his 1990 BAC conviction and his 1988 Idaho DUI conviction, for felony enhancement, because those convictions were expunged?

2.    Did the District Court err by not allowing his testimony regarding what he was informed of by the Kalispell City Judge concerning his 1990 BAC conviction?

3.    Did the District Court err in denying his motion to dismiss due to the fact that the 1988 Idaho conviction was uncounseled, and there was no evidence that he had knowingly and intelligently waived his right to counsel?

4.    Did the District Court err in denying his motion to dismiss for failure of the State to provide him the opportunity to obtain exculpatory evidence, i.e., an independent blood test?

5.    Did the District Court err by either instructing the jury that he was charged with a felony and as to his three prior convictions and requiring the State to present evidence of such or avoiding that by requiring him to stipulate prior to trial?

The original Opinion in this cause was issued on October 7, 1997, and appeared in 54 St.Rep. 1026. In the original Opinion, we reversed the District Court, concluding that the portion of Issue 1 relating to Sidmore's 1990 BAC conviction was dispositive of the appeal, and, consequently, we declined to address that part of Issue 1 regarding Sidmore's 1988 Idaho DUI conviction and we declined to address Issues 2-5. Thereafter, the State filed a petition for rehearing pursuant to Rule 34, M.R.App.P., and Sidmore filed a brief in opposition. On October 30, 1997, we granted the State's petition for rehearing, reserving our discussion of the arguments necessitating rehearing for this Opinion.

Without disagreeing with our Opinion issued October 7, 1997, the State argues in

its petition for rehearing that we erred by simply reversing the District Court. Relying on õ 3-5-302(2), MCA (1995), the State contends that although Sidmore may have been improperly charged with felony DUI, the District Court properly has jurisdiction over this case. The State, therefore, asserts that we should address the remaining issues on appeal and remand this case to the District Court for further proceedings.

Sidmore opposes the State's petition. Relying on õ 3-10-303(1), MCA (1995), Sidmore argues that we properly reversed the District Court because the District Court lacked jurisdiction. Sidmore contends that with the expungement of his 1990 BAC conviction, his current 1996 DUI conviction is only his second offense, which pursuant to õ 61-8-714(2), MCA (1995), is punishable by a fine not less than $300 or more than $500 and by imprisonment for not less than seven (7) days or more than six (6) months. Therefore, Sidmore asserts, that under õ 3-10-303(1), MCA (1995), his 1996 DUI conviction is a misdemeanor over which the justices' courts have original jurisdiction.

Citing õõ 61-8-714(3) and 3-10-303(3), MCA (1995), Sidmore concedes that if his 1996 DUI conviction counted as his third offense, the District Court would have concurrent jurisdiction. However, Sidmore maintains that his 1996 DUI was only his second offense, and, therefore, the District Court did not have original jurisdiction.

We disagree with the State that under õ 3-5-302(2), MCA (1995), the District Court retains jurisdiction in this case even though Sidmore was improperly charged with felony DUI in the first instance. Section 3-5-302(2)(b), MCA (1995), provides that the district court has concurrent jurisdiction with the justices' court in "misdemeanors resulting from the reduction of a felony or misdemeanor offense charged in the district court." We agree with Sidmore that this statute does not apply on the facts of this case. Contrary to the State's argument, the felony with which Sidmore was charged, tried and convicted was never reduced to a misdemeanor in the District Court. Furthermore, to argue that the District Court retains jurisdiction under õ 3-5-302(2)(b), MCA (1995), is to assume that the District Court properly exercised jurisdiction from the beginning. However, this argument and its underlying assumption confuse the issue--the issue is not whether the District Court should retain jurisdiction over this case, but whether the District Court properly exercised jurisdiction in the first place. Therefore, to resolve this issue, we must look to õ 3-10-303, MCA (1995).

We note in our original Opinion issued October 7, 1997, we held that Sidmore's 1990 BAC conviction should have been expunged from his record pursuant to õ 61-8-722(6), MCA (1989). With the expungement of Sidmore's 1990 BAC conviction, two previous convictions remain on his record--a 1988 Idaho DUI conviction and a 1994 Montana DUI conviction. Consequently, based on our previous Opinion and contrary to

Sidmore's argument, his current 1996 DUI would be his third offense. Pursuant to õ 61-8-714(3), MCA (1995), a third DUI conviction is punishable by imprisonment of not less than thirty (30) days or more than one (1) year and a fine of not less than $500 or more than $1,000. Therefore, as Sidmore concedes, pursuant to õ 3-10-303(3), MCA (1995), the justices' courts and district courts would have concurrent jurisdiction over a third DUI offense. Because the District Court would have concurrent jurisdiction over a third DUI offense, our decision to address only that part of Issue 1 concerning Sidmore's 1990 BAC conviction and to simply reverse the District Court was in error. For these reasons, we agree to address the remaining issues on appeal. Accordingly, our original Opinion issued October 7, 1997, is now withdrawn and this Opinion substituted.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 23, 1996, Sidmore was arrested for driving while under the influence (DUI) and for driving while his license was revoked. Sidmore's driving record revealed that he had received two previous DUI convictions (a 1988 Idaho conviction and a 1994 Montana conviction) and one conviction in 1990 for driving with excessive blood alcohol concentration (BAC), in violation of õ 61-8-406, MCA (1989). Consequently, on April 8, 1996, an Information was filed with the Twentieth Judicial District Court, Lake County, charging Sidmore with felony DUI, fourth offense, in violation of õ 61-8-401(1)(a), MCA (1995), (Count I). Additionally, Sidmore was charged with driving while license suspended or revoked, a misdemeanor, in violation of õ 61-5-212, MCA (1995), (Count II). On April 10, 1996, Sidmore entered pleas of not guilty to both charges.

On May 17, 1996, Sidmore moved to dismiss Count I of the Information alleging that the felony charge against him violated his rights to be free from ex post facto legislation; that his 1988 DUI conviction and 1990 BAC conviction should be expunged; that the State violated prior plea bargain agreements with him; and that the State violated his due process rights by failing to provide an independent blood test. On June 12, 1996, the District Court held an evidentiary hearing regarding Sidmore's motion to dismiss and denied his motion. At the end of the hearing, Sidmore entered a plea of guilty to Count II. Thereafter, Sidmore submitted two more motions to dismiss Count I, which the District Court also denied. The court did not support its denial of any of Sidmore's three motions to dismiss with a memorandum of opinion or rationale.

On August 29, 1996, a jury trial was held and Sidmore was found guilty of Count I. On October 9, 1996, a sentencing hearing was held. On March 3, 1997, the District Court issued an amended judgment and commitment, sentencing Sidmore, based on certain conditions, to the Montana State Prison for six years, with four years suspended

under Count I and to the Lake County Jail for a concurrent six month suspended sentence under Count II.  However, the District Court stayed execution of this sentence pending appeal.  Sidmore appeals from the District Court's denial of his motions to dismiss, from other various alleged errors and from his judgment and sentence.

DISCUSSION

A district court's grant or denial of a motion to dismiss in a criminal case is a question of law which we review de novo.  State v. Brander (1996), 280 Mont. 148, 151, 930 P.2d 31, 33 (citation omitted).  The two issues addressed in this Opinion arise from arguments made in Sidmore's May 17, 1996 motion to dismiss which the District Court denied after an evidentiary hearing on June 12, 1996.  First, in addressing Sidmore's expungement arguments in Issue 1, we conclude that both Sidmore's 1990 BAC conviction and his 1988 Idaho DUI conviction should have been expunged from his Montana driving record, and, therefore, these convictions could not now be counted to support the present charge of felony DUI, fourth offense, pursuant to õ 61-8-714, MCA (1995).  Consequently, with our decision that two of Sidmore's three prior convictions should be expunged, his current 1996 DUI is only his second offense.  Accordingly, without disrupting our decision to grant rehearing, we now conclude that the District Court lacked original jurisdiction in this cause because Sidmore's 1996 DUI is only his second offense.  See õõ 61-8-714(2) and 3-10-303(1), MCA (1995).  Consequently, we hold that the District Court erred by denying Sidmore's motion to dismiss Count I of the Information for lack of original jurisdiction.  Accordingly, we reverse the District Court and order the felony charges against Sidmore to be dismissed.

Furthermore, we note that neither the State nor Sidmore develop any arguments concerning whether the 1996 DUI charges can be re-filed in justice court as a misdemeanor DUI, and, therefore, we will not address this issue.  However, we acknowledge that the issue of whether Sidmore's due process right to obtain an independent blood test was violated may be raised again if the charges against him are re-filed in justice court.  Therefore, we have addressed this issue.  In so doing, we conclude that Sidmore's right to obtain an independent blood test was not violated, and, therefore, we hold that the District Court did not err in denying Sidmore's motion to dismiss on this basis.

1.    Did the District Court err in denying Sidmore's motion to dismiss for lack of jurisdiction related to the use by the State of his 1990 BAC conviction and his 1988 Idaho DUI conviction, for felony enhancement, because those convictions were expunged?

Sidmore was charged and convicted of felony DUI, fourth offense, pursuant to õ 61-8-714, MCA (1995), which provides in pertinent part:

(4)    On the fourth or subsequent conviction, the person is guilty of a felony offense and shall be punished by imprisonment for a term of not less than 1 year or more than 10 years and by a fine of not less than

$1,000 or more than $10,000.  . . ..

. . ..

(6)  For the purpose of determining the number of convictions under this section, "conviction" means a final conviction, as defined in 45-2-101, in this state, conviction for a violation of a similar statute in another state, or a forfeiture of bail or collateral deposited to secure the defendant's appearance in court in this state or another state, which forfeiture has not been vacated.  An offender is considered to have been previously convicted for the purposes of sentencing if less than 5 years have elapsed between the commission of the present offense and a previous conviction, unless the offense is the offender's fourth or subsequent offense, in which case all previous convictions must be used for sentencing purposes.  If there has not been an additional conviction for an offense under this section for a period of 5 years after a prior conviction under this section, then all records and data relating to the prior conviction are confidential criminal justice information, as defined in 44-5-103, and public access to the information may only be obtained by district court order upon good cause shown.

(7)  For the purpose of calculating subsequent convictions under this section, a conviction for a violation of 61-8-406 also constitutes a conviction for a violation of 61-8-401.  [Emphasis added.]

To support the charge of felony DUI, fourth offense, pursuant to õ 61-8-714, MCA (1995), the District Court counted Sidmore's two prior DUI convictions as well as his one prior BAC conviction.

Sidmore argues that the District Court erred in denying his motion to dismiss, and, therefore, that the charge of felony DUI, fourth offense, should be dismissed.  Sidmore concedes that under õ 61-8-714(7), MCA (1995), both BAC and DUI convictions can be counted to determine the total number of "DUI" convictions a defendant has received.  However, he asserts that both his 1990 BAC conviction and his 1988 Idaho DUI conviction may not be counted for the purposes of presently charging him with felony DUI, fourth offense, pursuant to õ 61-8-714, MCA (1995), because these convictions should have been expunged by operation of law.

Sidmore explains that under the expungement provision of õ 61-8-722(6), MCA (1989), he was entitled to have his 1990 BAC conviction expunged from his record because he did not receive a subsequent BAC conviction within the five-year period following his 1990 BAC conviction.  Sidmore also asserts that pursuant to the plain language of õ 61-8-722(6), MCA (1989), his 1994 DUI conviction did not prevent expungement of his 1990 BAC conviction.

In this same regard, Sidmore explains that under the expungement provision of õ 61-8-714(5), MCA (1987), he was entitled to have his 1988 Idaho DUI conviction expunged from his Montana record because he did not receive a subsequent DUI conviction within the five-year period following his 1988 Idaho DUI conviction.  Sidmore also asserts that pursuant to the plain language of õ 61-8-714(5), MCA (1987), his 1990 BAC conviction did not prevent expungement of his 1988 Idaho DUI conviction.

The State responds that Sidmore's expungement arguments concerning both his

1990 BAC conviction and his 1988 Idaho DUI conviction are without merit. Additionally, specifically regarding Sidmore's argument concerning the expungement of his 1988 Idaho DUI conviction, the State asserts that Sidmore did not properly preserve this argument for appeal. Therefore, the State argues that for the purposes of the sentence enhancement statute of õ 61-8-714, MCA (1995), Sidmore's present offense is his fourth DUI offense. Consequently, the State asserts that the District Court properly denied Sidmore's motion to dismiss. We disagree.

It is black-letter law that:

[i]n the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.

Section 1-2-101, MCA. In this case, we need only look to and apply the plain and unambiguous language of the statutes at issue, particularly õ 61-8-722(6), MCA (1989), and õ 61-8-714(5), MCA (1987), to conclude that Sidmore's arguments are correct. Additionally, we note that Sidmore did raise arguments before the District Court concerning expungement, under Montana law, of both his 1990 BAC conviction and his 1988 Idaho DUI conviction from his Montana record. Therefore, we will address the merits of both expungement arguments raised under Issue 1.

a. Expungement of Sidmore's 1990 BAC conviction

In 1990, Sidmore received a BAC conviction pursuant to õõ 61-8-406 and -722, MCA (1989). Section 61-8-406, MCA (1989), provided:

It is unlawful and punishable as provided in 61-8-722 and 61-8-723 for any person to drive or be in actual physical control of a vehicle upon the ways of this state open to the public while the alcohol concentration in his blood, breath, or urine is 0.10 or more. Absolute liability as provided in 45-2-104 will be imposed for a violation of this section.

Additionally, õ 61-8-722(6), MCA (1989), provided in pertinent part:

For the purpose of determining the number of convictions under this section, "conviction" means a final conviction, as defined in 45-2-101, in this state or a similar statute in another state or a forfeiture of bail or collateral deposited to secure the defendant's appearance in court in this state or another state, which forfeiture has not been vacated. An offender is considered to have been previously convicted for the purposes of this section if less than 5 years have elapsed between the commission of the present offense and a previous conviction. If there has been no additional conviction for an offense under this section for a period of 5 years after a prior conviction hereunder, then such prior offense shall be expunged from the defendant's record. [Emphasis added.]

Section 61-8-714, MCA (1995), provides that both BAC (õ 61-8-406, MCA) and DUI (õ 61-8-401, MCA) convictions may be counted to support a charge of felony DUI, fourth offense. However, in the case at bar, Sidmore's prior 1990 BAC conviction may only be counted under õ 61-8-714, MCA (1995), if his 1990 BAC conviction was not expunged from his record pursuant to õ 61-8-722(6), MCA (1989). See Brander, 930 P.2d at 35-37. When Sidmore received his BAC conviction in 1990, õ 61-8-722(6), MCA (1989), contained an expungement provision which provided that "[i]f there has been no additional conviction for an offense under this section for a period of 5 years after a prior conviction hereunder, then such prior offense shall be expunged from the

defendant's record. [Emphasis added.]" That is, the expungement provision of õ 61-8-722(6), MCA (1989), provided that if Sidmore did not receive an additional BAC conviction within the five-year period following his 1990 BAC conviction, he was entitled to have his 1990 BAC conviction expunged from his record. Nothing in õ 61-8-722(6), MCA (1989), provided that both BAC and DUI convictions received within the five-year period following Sidmore's 1990 BAC conviction could be counted to determine whether Sidmore was entitled to have his prior BAC conviction expunged from his record. Indeed, the plain language of this section requires precisely the opposite conclusion. In other words, whether Sidmore received a subsequent DUI conviction within the five-year period following his 1990 BAC conviction would not affect his 1990 BAC conviction's eligibility for expungement under õ 61-8-722(6), MCA (1989), providing he did not receive another BAC conviction within five years of the 1990 BAC conviction.

As Sidmore's driving record indicates, while he received a subsequent DUI conviction in 1994, he did not receive another BAC conviction during the five-year period following his 1990 BAC conviction. Consequently, based on the plain language of õ 61-8-722(6), MCA (1989), Sidmore's 1990 BAC conviction should have been automatically expunged in 1995, as a matter of law. See State v. Bowles (Mont.1997), 947 P.2d 52, 54 St.Rep. 962 (holding that identical language in the expungement provision of õ 61-8-714(5), MCA (1981), provided for automatic expungement of eligible DUI convictions as a matter of law). That is, all traces of the criminal process relating to his 1990 BAC conviction should have been destroyed in 1995. See Brander, 930 P.2d at 36 (citations omitted). Therefore, because Sidmore's 1990 BAC conviction no longer exists, it cannot be counted to support the present charge of felony DUI, fourth offense, pursuant to õ 61-8-714, MCA (1995).

b. Expungement of Sidmore's 1988 Idaho DUI conviction

In 1988, Sidmore received a DUI conviction from the Magistrate Division of the First Judicial District Court, Bonner County, Idaho. We agree with Sidmore that despite receiving his 1988 DUI conviction in Idaho, this conviction should have been expunged as a matter of law in 1993 from his Montana driving record pursuant to õ 61-8-714(5), MCA (1987). In making this conclusion, we note that both Montana and Idaho have enacted the Driver License Compact. See õõ 61-5-401 et seq., MCA. See also Idaho Code õ 49-2001. The Driver License Compact provides in pertinent part:

Article III. Reports of Conviction

The licensing authority of a party state shall report each conviction of a person from another party state occurring within its jurisdiction to the licensing authority of the home state of the licensee. Such report shall clearly identify the person convicted; describe the violation specifying the section of the statute, code, or ordinance violated; identify the court in which action was taken; indicate whether a plea of guilty or not guilty was

entered or the conviction was a result of the forfeiture of bail, bond, or other security; and include any special findings made in connection therewith.

Article IV.  Effect of Conviction

(1)    The licensing authority in the home state, for the purposes of suspension, revocation, or limitation of the license to operate a motor vehicle, shall give the same effect to the conduct reported, pursuant to Article III of this compact, as it would if such conduct had occurred in the home state, in the case of convictions for:

(a)    manslaughter or negligent homicide resulting from the operation of a motor vehicle;

(b)    driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug, or under the influence of any other drug to a degree which renders the driver incapable of safely driving a motor vehicle;

(c)    any felony in the commission of which a motor vehicle is used;

(d)    failure to stop and render aid in the event of a motor vehicle accident resulting in the death or personal injury of another.

(2)    As to other convictions, reported pursuant to Article III, the licensing authority in the home state shall give such effect to the conduct as is provided by the laws of the home state.

Section 61-5-401, MCA (emphasis added) (pursuant to õ 61-5-401, Art. II, (2), MCA, "home state" is defined as "the state which has issued and has the power to suspend or revoke the use of the license or permit to operate a motor vehicle [i.e., in this instance, Montana is the home state]").

Additionally, õ 61-5-107, MCA (1987), sets forth the driver's license application process and provides in pertinent part:

(3)    Whenever application is received from an applicant previously licensed by any other jurisdiction, the department shall request a copy of such applicant's driving record from such previous licensing jurisdiction. When received, such driving records shall become a part of the driver's record in this state with the same force and effect as though entered on the driver's record in this state in the original instance.  [Emphasis added.]

In this case, it is unclear from the record whether Sidmore was licensed to drive in Idaho or Montana at the time of his 1988 Idaho DUI conviction.  However, as indicated by the emphasized language in the preceding statutes, regardless of the manner in which the State of Montana received information concerning Sidmore's Idaho conviction, this conviction is to be given the same effect as if entered in Montana.  Therefore, because Sidmore received his Idaho DUI conviction in 1988, we apply the statutory language of õõ 61-8-401 and -714, MCA (1987), to determine not whether his 1988 Idaho DUI conviction should have been expunged from his Idaho record, but whether his 1988 Idaho DUI conviction should have been expunged from his Montana record.

Section 61-8-401, MCA (1987), provided in pertinent part:

(1)    It is unlawful and punishable as provided in 61-8-714 and 61-8-723 for any person who is under the influence of:

    (a)    alcohol to drive or be in actual physical control of a vehicle upon the ways of this state open to the public;

    (b)    a narcotic drug to drive or be in actual physical control of a vehicle within this state;

    (c)    any other drug to drive or be in actual physical control of a vehicle within this state; or

    (d)    alcohol and any drug to drive or be in actual physical control of a vehicle within this state.

Additionally, õ 61-8-714(5), MCA (1987), provided:

For the purpose of determining the number of convictions under this section, "conviction" means a final conviction, as defined in 45-2-101, in this state or a similar statute in another state or a forfeiture of bail or collateral deposited to secure the defendant's appearance in court in this state or another state, which forfeiture has not been vacated. An offender is considered to have been previously convicted for the purposes of this section if less than 5 years have elapsed between the commission of the present offense and a previous conviction. If there has been no additional conviction for an offense under this section for a period of 5 years after a prior conviction hereunder, then such prior offense shall be expunged from the defendant's record. [Emphasis added.]

As is seen from the language of õ 61-8-714(5), MCA (1987), which provided that "[f]or the purpose of determining the number of convictions under this section, 'conviction' means a final conviction, as defined in 45-2-101, in this state or a similar statute in another state . . .," this statutory expungement provision applies to Sidmore's 1988 Idaho DUI conviction. Furthermore, the language of the DUI expungement provision of õ 61-8-714(5), MCA (1987), is identical to the language of the BAC expungement provision of õ 61-8-722(6), MCA (1989). Therefore, we conclude that Sidmore's 1988 Idaho DUI conviction should have been expunged from his Montana record in 1993 pursuant to õ 61-8-714(5), MCA (1987), just as his 1990 BAC conviction should have been expunged from his record in 1995 pursuant to õ 61-8-722(6), MCA (1989).

That is, the expungement provision of õ 61-8-714(5), MCA (1987), provided that if Sidmore did not receive an additional DUI conviction within the five-year period following his 1988 DUI conviction, he was entitled to have his 1988 DUI conviction expunged from his record. Nothing in õ 61-8-714(5), MCA (1987), provided that both BAC and DUI convictions received within the five-year period following Sidmore's 1988 DUI conviction could be counted to determine whether Sidmore was entitled to have his prior DUI conviction expunged from his record. Consequently, whether Sidmore received a subsequent BAC conviction within the five-year period following his 1988 DUI conviction would not affect his 1988 DUI conviction's eligibility for expungement under õ 61-8-714(5), MCA (1987), providing he did not receive another DUI conviction within five years of the 1988 DUI conviction.

As Sidmore's driving record indicates, while he received a subsequent BAC conviction in 1990, he did not receive another DUI conviction during the five-year period following his 1988 Idaho DUI conviction. Consequently, based on the plain language of õ 61-8-714(5), MCA (1987), Sidmore's 1988 Idaho DUI conviction should have been

automatically expunged from his Montana record in 1993, as a matter of law. See Bowles, 947 P.2d 52. That is, all traces of information relating to his 1988 Idaho DUI conviction contained in his Montana record should have been destroyed in 1993. See Brander, 930 P.2d at 36 (citations omitted). Therefore, because Sidmore's 1988 Idaho DUI conviction no longer exists on his Montana record, it cannot be counted to support the present charge of felony DUI, fourth offense, pursuant to õ 61-8-714, MCA (1995).

Consequently, on this basis, we hold that the District Court erred by denying Sidmore's motion to dismiss Count I of the Information for lack of original jurisdiction.

2. Did the District Court err by not allowing Sidmore's testimony regarding what he was informed of by the Kalispell City Judge concerning his 1990 BAC conviction?

Sidmore alternatively argues that his 1990 BAC conviction cannot be counted in support of the charge of felony DUI, fourth offense, because he did not knowingly or intelligently waive his right to counsel in that proceeding. Based on information the Kalispell City Judge gave him, Sidmore contends that he did not understand the legal consequences of his plea of guilty to the 1990 BAC charge, and, therefore, he did not knowingly or intelligently waive his right to counsel.

In Issue 1, we determined that Sidmore's 1990 BAC conviction should have been expunged from his record pursuant to õ 61-8-722(6), MCA (1989), and, therefore, his 1990 BAC conviction could not be counted in support of the charge of felony DUI, fourth offense. Because our decision in Issue 1 is dispositive, we will not address this issue.

3. Did the District Court err in denying Sidmore's motion to dismiss due to the fact that the 1988 Idaho conviction was uncounseled, and there was no evidence that he had knowingly and intelligently waived his right to counsel?

Sidmore also alternatively argues that his 1988 Idaho DUI conviction cannot be counted in support of the charge of felony DUI, fourth offense, because he did not knowingly or intelligently waive his right to counsel in that proceeding.

In Issue 1, we also determined that Sidmore's 1988 Idaho DUI conviction should have been expunged from his Montana driving record pursuant to õ 61-8-714(5), MCA (1987), and, therefore, his 1988 Idaho DUI conviction could not be counted in support of the charge of felony DUI, fourth offense. Again, because our decision in Issue 1 is dispositive, we will not address this issue.

4. Did the District Court err in denying Sidmore's motion to dismiss for failure of the State to provide him the opportunity to obtain exculpatory evidence, i.e., an independent blood test?

On June 12, 1996, an evidentiary hearing was held concerning Sidmore's argument in his first motion to dismiss that his right to obtain exculpatory evidence was violated.

During this hearing Sidmore's arresting officer testified that when he processed Sidmore for driving under the influence, he read the Implied Consent Law to Sidmore twice and Sidmore read it once. Then he asked Sidmore to take a breath test and Sidmore refused.

Sidmore's arresting officer also testified that after reading the Implied Consent Law to

Sidmore, Sidmore requested a blood test and that he advised Sidmore that after processing, he would give Sidmore a telephone book to locate someone to perform the blood test. Furthermore, he told Sidmore that when Sidmore located someone, he would take Sidmore to have the blood test performed. Thereafter, Sidmore was placed in a booking cell which contained a telephone and was given a phone book. The arresting officer testified that Sidmore remained in the booking cell for 30-45 minutes and during that time he was no more than a few feet away from Sidmore, separated only by bars and an open doorway. Yet, during that time, Sidmore never made arrangements for an independent blood test.

Citing City of Whitefish v. Pinson (1995), 271 Mont. 170, 895 P.2d 610, Sidmore argues that his due process rights were violated because he was denied the opportunity to obtain exculpatory evidence. Specifically, Sidmore asserts that he refused an officer-designated breath test and stated that he wanted an independent blood test. However, Sidmore contends that the officer simply provided him with a phone book to locate a doctor or nurse who was willing to draw blood rather than transporting him to the local hospital emergency room for the blood test. Therefore, Sidmore argues that by failing to take him for a blood test, the officer violated his right to obtain exculpatory evidence. Accordingly, Sidmore concludes that the District Court erred when it failed to dismiss the felony DUI charge against him on this basis.

Relying on State v. Klinkhammer (1993), 256 Mont. 275, 846 P.2d 1008, the State responds that Sidmore did not request an independent blood test. Rather, the State argues that Sidmore, like Klinkhammer, requested a blood test in lieu of the officer-designated breath test, and, therefore, this constituted a refusal of the officer-designated test rather than a request for an independent blood test. Additionally, citing State v. Clark (1988), 234 Mont. 222, 762 P.2d 853, the State argues that the arresting officer did not impede Sidmore's ability to obtain an independent blood test. Accordingly, the State concludes that the District Court properly denied Sidmore's first motion to dismiss on this basis.

In addition to the officer-designated breath test provided for under õ 61-8-402, MCA (1995) (the Implied Consent Law), õ 61-8-405(2), MCA (1995), allowed for additional tests to determine blood alcohol. Section 61-8-405(2), MCA (1995), provided:

The person may, at the person's own expense, have a physician or registered nurse of the person's own choosing administer a test, in addition to any administered at the direction of a peace officer, for the purpose of determining any measured amount or detected presence of alcohol or drugs in the person at the time alleged, as shown by analysis of the person's

blood, breath, or urine. The failure or inability to obtain an additional test by a person does not preclude the admissibility in evidence of the test or tests taken at the direction of a peace officer.

In State v. Swanson (1986), 222 Mont. 357, 722 P.2d 1155, after quoting õ 61-8-405(2), MCA, we recognized that an accused person has a constitutionally guaranteed right to attempt to obtain exculpatory evidence. Swanson, 722 P.2d at 1157. More specifically, we recognized that the accused's right to obtain exculpatory evidence includes the right to obtain an independent test to establish sobriety when charged with the offense of driving under the influence, even if the accused has refused a test offered by a law enforcement officer. Swanson, 722 P.2d at 1157. Furthermore, we held that "[w]hile the police have no duty to assist an accused in obtaining independent evidence of sobriety, they cannot frustrate such an effort through either affirmative acts or their rules and regulations." Swanson, 722 P.2d at 1158.

In State, City of Bozeman v. Peterson (1987), 227 Mont. 418, 739 P.2d 958, we "clarified" the rule in Swanson concerning the accused's right to obtain an independent blood test as follows:

For the purpose of clarification of our rule in Swanson that one accused of a crime involving intoxication is entitled to obtain a blood test, it should be explained that the rule applies only when (1) the defendant has timely claimed the right to a blood test, and (2) the officer or officers do not unreasonably impede the defendant's right to obtain a blood test. If a blood test of the defendant is unavailable through no unreasonable acts of an officer or officers, the Swanson rule does not apply.

Peterson, 739 P.2d at 961 (emphasis added). We subsequently quoted the criteria necessary for the Swanson rule to apply again in Clark, 762 P.2d at 856; Klinkhammer, 846 P.2d at 1011; and Pinson, 895 P.2d at 612.

Without disagreeing with the quoted material of Peterson previously set forth, we conclude that the second criterion, as written, is grammatically incorrect. As we explained in Klinkhammer:

Both criteria must be satisfied in order to support an allegation of a violation of a defendant's due process rights. The Swanson rule will not apply if the defendant either fails to timely request the test, or the test is unavailable through no unreasonable acts of law enforcement.

Klinkhammer, 846 P.2d at 1011. In other words, the rule in Swanson will apply only if the defendant can establish that he made a timely request for an independent test and that a law enforcement officer unreasonably impeded his right to obtain the test. However, as it is currently written, the second criterion sets forth that a defendant must establish that a law enforcement officer did not unreasonably impede his right to obtain an independent blood test to support an allegation that his due process rights were violated. As such, the second criterion is inconsistent with the rule as set forth in Swanson. Therefore, for the second criterion to be grammatically correct, it should read

"(2) the officer or officers do not unreasonably impede[d] the defendant's right to obtain a blood test."

Accordingly, to clarify our rule in Swanson that one accused of a crime involving intoxication is entitled to obtain an independent blood test, we hold that the rule applies only when (1) the defendant has timely claimed the right to an independent blood test, and (2) a law enforcement officer has unreasonably impeded the defendant's right to obtain an independent blood test. Both criteria must be satisfied in order to support an allegation of a violation of a defendant's due process rights. The Swanson rule will not apply if the defendant either fails to timely request the independent blood test, or the independent blood test is unavailable through no unreasonable acts of law enforcement.

Furthermore, after this appeal was submitted on briefs, we decided the case of City of Kalispell v. Strand (Mont. No. 96-366, decided December 16, 1997). In Strand, we reaffirmed the rule in Swanson and acknowledged that Swanson did not create for law enforcement officers an affirmative duty to assist the accused in obtaining independent evidence of sobriety, nor did that case go so far as to create a duty on the part of the police to inform the accused of the right to obtain an independent blood test. Strand, slip op. at 6. However, without disrupting the rule set forth in Swanson, we took the next step and held that "due process requires that the arresting officer inform the accused of his or her right to obtain an independent blood test, regardless of whether the accused consents to the test designated by the officer." Strand, slip op. at 6. We explained that due to the evanescent character of blood alcohol evidence, the accused's right to obtain an independent blood test is rendered meaningless unless the accused is apprised of this right while the blood can still be analyzed. Strand, slip op. at 6-7. Therefore, we held that a law enforcement officer has an affirmative duty to inform the accused of the right to obtain an independent blood test at the time of arrest. Strand, slip op. at 7.

In Strand, the Kalispell police department had an express policy that law enforcement officers should not read to the accused the implied consent advisory form, which explained the substance of Montana's implied consent statutes, unless or until the accused refused to submit to an officer-designated sobriety test. Strand, slip op. at 4.

Because Strand had submitted to the officer-designated breath test, he was never read the form, and, consequently, was never informed of his right to obtain an independent blood test. Strand, slip op. 4-5. Because Strand was not informed of his right to obtain an independent blood test, we concluded that his due process rights were violated. Strand, slip op. at 8.

In the case at bar, Sidmore does not argue that his due process rights to obtain exculpatory evidence were violated because he was never informed of his right to obtain an independent blood test, as was the case in Strand. Rather, Sidmore argues that his due process rights were violated because his arresting officer failed to take him to the local emergency room for an independent blood test after he requested the test. Therefore, as discussed previously, for Sidmore to support his allegation that his due process rights were violated, he must establish that his request for an independent blood test was timely and that the law enforcement officer unreasonably impeded his right to obtain the blood test. See Swanson, 722 P.2d at 1157-58.

First, we note that the State argues on appeal that Sidmore did not request an independent blood test. However, contrary to this argument, we note in the District Court record that the State clearly states in its June 3, 1996 Response to Sidmore's first motion to dismiss that "[d]uring the Defendant's DUI processing at the Lake County Sheriff's Department the Defendant did request an independent blood test." Because the State's argument that Sidmore did not request an independent blood test is not only not supported by the trial court record but also is raised for the first time on appeal, we will not address it. See State v. Fuhrmann (1996), 278 Mont. 396, 404, 925 P.2d 1162, 1167 (citing State v. Henderson (1994), 265 Mont. 454, 458, 877 P.2d 1013, 1016). Consequently, we conclude that Sidmore made a timely request for an independent blood test. Accordingly, we must only determine whether the State unreasonably impeded Sidmore's right to obtain an independent blood test.

Sidmore in essence argues that his arresting officer had a duty to take him to the local emergency room for an independent blood test, and that by failing to do so, the arresting officer violated his right to obtain exculpatory evidence. We disagree. As we explained in Clark, someone accused of criminal intoxication has a constitutional right to obtain exculpatory evidence, but such right is limited. Clark, 762 P.2d at 855. That

is, law enforcement officers do not have an affirmative duty to assist the accused in obtaining exculpatory evidence, rather law enforcement officers must only avoid interfering with the accused's efforts to obtain an independent sobriety test. Clark, 762 P.2d at 855-56 (citing Swanson, 722 P.2d at 1158).

In Clark, a police officer arrested Clark for driving under the influence. During the booking procedure, Clark interrupted the arresting officer's reading of the State of Montana Implied Consent Law Advisory Form to request a physician's care which the arresting officer denied. Thereafter, Clark again interrupted the arresting officer and stated that he wanted "a physician and registered nurse at this moment to take a sample of my blood." The arresting officer replied "just a minute" and finished reading the implied consent form. Clark then refused the breath test offered. After placing Clark in a holding cell, the arresting officer made five phone calls for Clark, including three to Clark's physician. During these telephone calls, Clark never requested that the physician perform a blood test. Clark, 762 P.2d at 855.

We rejected Clark's argument that due to his request during the reading of the implied consent law, the arresting officer was on notice that he was requesting an independent blood test and that by not aiding him in obtaining the test his rights were violated. Rather, we concluded that Clark was given an opportunity to obtain an independent blood test when the officer made phone calls on Clark's behalf to Clark's physician but that Clark failed to take the opportunity to set up an independent blood test. Therefore, we held that Clark's due process rights had not been violated. Clark, 762 P.2d at 856.

Here, after requesting an independent blood test, Sidmore's arresting officer advised him that after processing, he would give Sidmore a telephone book to locate someone to perform a blood test. Furthermore, Sidmore's arresting officer told Sidmore that once Sidmore located someone to perform the test, he would take Sidmore to have the test performed. Thereafter, he placed Sidmore in a booking cell which contained a telephone and Sidmore was given a telephone book. Sidmore remained in the booking cell for 30-45 minutes while his arresting officer was no more than a few feet away, separated only by bars and an open doorway. However, despite having access to a telephone and a telephone book during this period of time, Sidmore, like Clark, failed to take the opportunity to make arrangements for an independent blood test.

As we explained in Clark, Sidmore's request for an independent blood test did not create a duty on the part of his arresting officer to take him to the local hospital emergency room for a blood test to be performed. See Clark, 762 P.2d at 855-56. Rather, Sidmore's arresting officer was only required to avoid interfering with Sidmore's efforts to obtain the independent blood test. Clark, 762 P.2d at 855-56. Here, Sidmore's

arresting officer did not interfere with Sidmore's efforts to obtain an independent blood test. Instead, after Sidmore requested an independent blood test, Sidmore's arresting officer provided him with the opportunity to obtain an independent blood test by giving him access to a telephone and a telephone book and by informing him that transportation would be provided to the test once Sidmore made arrangements. Despite this opportunity, Sidmore failed to make arrangements for the independent blood test. Therefore, while Sidmore made a timely request for an independent blood test, the unavailability of the test was not caused by the unreasonable acts of law enforcement, but rather was caused by Sidmore's own failure to act after he requested the independent blood test and was given the opportunity to arrange the test. As such, we conclude that Sidmore's due process rights were not violated. Accordingly, we hold that the District Court did not err in denying Sidmore's motion to dismiss on this basis.

5.    Did the District Court err by either instructing the jury that Sidmore was charged with a felony and as to his three prior convictions and requiring the State to present evidence of such or avoiding that by requiring him to stipulate prior to trial?

Sidmore filed a pretrial motion in limine to exclude introduction of evidence of his prior convictions and that his current charge was a felony. Prior to trial, the District Court, for the purposes of establishing jurisdiction, asked the parties to stipulate that the requisite number of convictions existed for Sidmore's current DUI offense to be charged as a felony, fourth offense, in the District Court. Sidmore's counsel agreed to the stipulation, reserving the right to appeal his three motions to dismiss which the District Court had denied. Now, on appeal, Sidmore challenges this stipulation. However, because Sidmore raises this issue for the first time on appeal, we will not address it. See State v. Weeks (1995), 270 Mont. 63, 86, 891 P.2d 477, 491.

In sum, we conclude that Sidmore's due process right to obtain an independent blood test was not violated, and, therefore, we hold that the District Court did not err in denying Sidmore's motion to dismiss on this basis. However, we conclude that both Sidmore's 1990 BAC conviction and his 1988 Idaho DUI conviction should have been expunged as a matter of law from his Montana record. Consequently, we hold that the District Court erred by denying Sidmore's motion to dismiss Count I of the Information for lack of original jurisdiction. Accordingly, we reverse the District Court and order it to dismiss the felony charges against Sidmore.

Reversed.

/S/  JAMES C. NELSON

We Concur:

/S/  J. A.  TURNAGE
/S/  W. WILLIAM LEAPHART
/S/  TERRY N. TRIEWEILER
/S/  JIM REGNIER