No. 04-826

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 117

STATE OF MONTANA,

   Plaintiff and Respondent,

  v.

RANDY BLAINE SMERKER,

   Defendant and Appellant

APPEAL FROM:  District Court of the Twelfth Judicial District,
        In and For the County of Hill, Cause No. DC-03-019
        Honorable E. Wayne Phillips, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

   Randy H. Randolph, Attorney at Law, Havre, Montana

   For Respondent:

   Hon. Mike McGrath, Attorney General; Joslyn M. Hunt,
   Assistant Attorney General, Helena, Montana

   Cyndee L. Peterson, Hill County Attorney, Havre, Montana

           Submitted on Briefs: January 31, 2006

              Decided: May 25. 2006

Filed:

   _____
         Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     Randy Blaine Smerker (Smerker) appeals from the judgment entered by the Twelfth Judicial District Court, Hill County, on his conviction for driving under the influence of alcohol (DUI), fourth or subsequent offense, a felony. We affirm.

¶2     Smerker raises the following issues on appeal:

¶3     1. Did the District Court err in denying Smerker's motion to dismiss based on a violation of his right to receive an independent examination of his blood alcohol concentration?

¶4     2. Did the District Court abuse its discretion in denying Smerker's motion for a new trial based on attorney conflict of interest?

¶5     3. Was Smerker's constitutional right to due process violated when the District Court refused to rule on his motion to dismiss?

¶6     4. Should the felony DUI charge be dismissed because two of Smerker's prior DUI convictions were constitutionally invalid?

BACKGROUND

¶7     On March 1, 2003, Havre police Sergeant Russ Ostwalt (Ostwalt) initiated a traffic stop of Smerker's vehicle. The traffic stop culminated in Smerker's arrest for DUI. Ostwalt transported Smerker to the Hill County detention center for processing. At the detention center, Ostwalt requested Smerker take several field sobriety tests, which Smerker failed. Ostwalt then read Smerker an implied consent advisory form and requested him to take a

2

breath test to determine his blood alcohol concentration (BAC). While attempting to complete the breath test, Smerker kept placing his tongue over the mouthpiece, thereby obstructing the airflow into the machine, and Ostwalt was unable to obtain a proper breath sample. As a result, Ostwalt informed Smerker that the improper sample would be recorded as a refusal to take the breath test. The traffic stop and the subsequent events at the detention center were recorded on videotape.

¶8 The State of Montana (State) ultimately charged Smerker by information with DUI, fourth or subsequent offense, a felony. Smerker moved the District Court to dismiss the charge against him on the basis that Ostwalt had failed to properly advise Smerker of his right, and unreasonably impeded his ability, to obtain an independent test to determine his BAC. The District Court held a hearing on the motion, reviewed the videotape of Smerker's processing at the detention center on the night of his arrest and the parties' briefs on the motion, and subsequently denied Smerker's motion to dismiss.

¶9 A jury trial was held on April 26, 2004, and the jury found Smerker guilty of DUI. The District Court then set a date for a sentencing hearing and ordered the preparation of a presentence investigation (PSI) report. Following the trial, Smerker retained new defense counsel and moved the District Court for a new trial on the basis that his trial counsel rendered ineffective assistance of counsel because of a conflict of interest. The District Court denied this motion.

¶10 At the beginning of the sentencing hearing held on September 20, 2004, Smerker informed the District Court that he would be filing a motion to dismiss the felony DUI charge

3

on the basis that two of his underlying misdemeanor DUI convictions were constitutionally invalid and could not be used to enhance the current offense to a felony. Smerker also informed the court that he would be filing a notice of appeal. The District Court proceeded with the sentencing hearing, ultimately sentencing Smerker to 13 months with the Department of Corrections (DOC), to be followed by a four-year suspended sentence under the DOC's supervision. The court stayed execution of the sentence pending briefing by the parties and resolution of Smerker's motion to dismiss. Later that day, Smerker simultaneously filed his notice of appeal and his motion to dismiss the felony DUI charge, together with his affidavit in support of the motion.

¶11 Smerker and the State then filed briefs in support of and opposition to the motion to dismiss. Both parties provided the District Court with various documents from the prior DUI proceedings in support of their respective positions. On December 1, 2004, the District Court entered an order in which it declined to rule on the motion to dismiss, concluding that Smerker's filing of a notice of appeal in the case deprived the court of jurisdiction to determine the issue. The court also observed that, on the same basis, it appeared to have no authority to enter a written judgment on Smerker's conviction and sentence. Following entry of this order, the clerk of the Hill County District Court transmitted the District Court record to this Court for purposes of the appeal.

¶12 In June of 2005, Smerker moved this Court for a second extension of time in which to file his opening brief on appeal. In his motion, he observed that the District Court had not entered a written judgment as a result of his filing his notice of appeal. Smerker appended to

4

his motion a stipulation entered into between himself and the Hill County Attorney, in which the parties agreed that this Court could treat the minute entry memorializing what occurred at the sentencing hearing as the final judgment in this case. On June 22, 2005, we entered an order in which, notwithstanding the parties' stipulation, we declined to deem the minute entry the final judgment. We ordered that the appeal be held in abeyance while the case was remanded to the District Court for entry of a final written judgment. The District Court entered its written judgment on Smerker's conviction and sentence on June 29, 2005. The parties subsequently have filed their briefs on appeal and the case is ready for resolution.

## DISCUSSION

¶13     *1. Did the District Court err in denying Smerker's motion to dismiss based on a violation of his right to receive an independent examination of his blood alcohol concentration?*

¶14     As stated above, Smerker moved the District Court to dismiss the charge against him, asserting that his due process rights were violated because Ostwalt failed to properly advise Smerker of his right, and unreasonably impeded his ability, to obtain an independent test to determine his BAC. After hearing the parties' arguments and viewing the videotape of Smerker's processing at the detention center on the night of his arrest, the District Court concluded that Ostwalt informed Smerker of his right to obtain an independent test of his BAC and did not impede Smerker's ability to obtain such a test. On that basis, the court denied Smerker's motion to dismiss. Smerker asserts error. A district court's ruling on a motion to dismiss in a criminal case involves a question of law which we review *de novo*. *State v. Minkoff*,  2002 MT 29, ¶ 8, 308 Mont. 248, ¶ 8, 42 P.3d 223, ¶ 8.

¶15 Pursuant to § 61-8-402(1), MCA, any person operating or in actual physical control of a vehicle upon ways of the state is considered to have given consent to a test of the person's blood or breath for the presence of alcohol or drugs. The peace officer investigating or making an arrest for a DUI offense may designate which test is to be used to determine the person's BAC. Section 61-8-402(2)(b), MCA. However, § 61-8-405(2), MCA, provides as follows:

> In addition to any test administered at the direction of a peace officer, a person may request that an independent blood sample be drawn by a physician or registered nurse for the purpose of determining any measured amount or detected presence of alcohol, drugs, or any combination of alcohol and drugs in the person. The peace officer may not unreasonably impede the person's right to obtain an independent blood test. The officer may but has no duty to transport the person to a medical facility or otherwise assist the person in obtaining the test. The cost of an independent blood test is the sole responsibility of the person requesting the test. The failure or inability to obtain an independent test by a person does not preclude the admissibility in evidence of any test given at the direction of a peace officer.

¶16 We have held that an accused has a constitutionally guaranteed due process right to attempt to obtain exculpatory evidence, which right includes the right to obtain an independent test to determine the accused's BAC when charged with a DUI offense. *Minkoff*, ¶ 9; *State v. Sidmore* (1997), 286 Mont. 218, 233, 951 P.2d 558, 568. A defendant who alleges a denial of due process with regard to the right to an independent BAC test must establish both that the defendant timely requested the independent test and that the arresting officer unreasonably impeded the right to the test. *Minkoff*, ¶ 10. Additionally, "we have held that the accused must be informed of his or her right to independent testing and that failure to so advise is a due process violation." *Minkoff*, ¶ 9.

6

¶17    The videotape recorded at the detention center on the night of Smerker's arrest portrays the following events. Upon arriving at the detention center, Ostwalt requested Smerker to perform several field sobriety tests. Following the tests, Ostwalt informed Smerker that he was under arrest for DUI. Ostwalt then began reading an implied consent advisory form to Smerker. When Ostwalt reached the portion of the form describing the implied consent law and informed Smerker that Ostwalt was requesting him to take a breath test, Smerker interrupted and asked whether he could take a urine test. Ostwalt responded that, if Smerker listened, the remaining portion of the advisory form would answer his question. Ostwalt continued reading the advisory form, including the portion which described Smerker's right to obtain an independent test of his BAC at his own expense.

¶18    When Ostwalt finished reading the implied consent advisory form, Smerker asked whether he could take a different test. Ostwalt responded that he was requesting that Smerker take a breath test. While waiting for the breath test machine to warm up, Smerker asked whether he could take a breath test and Ostwalt responded that was the test he was going to take. Smerker consented to taking a breath test but could not—or would not—provide a proper sample. Ostwalt then informed him that the result would have to be recorded as a refusal. Ostwalt read Smerker his Miranda rights and proceeded to fill out paperwork. Smerker again asked whether he could take a urine test and Ostwalt told him he could do so at his own expense. Smerker then asked "will that do it for you or not?" Ostwalt told Smerker the urine test would not change the fact that Ostwalt had to record the breath

7

test as a refusal, but if Smerker wished to take a urine test he was more than welcome to do so at his own expense. Smerker replied "[n]o, I was just asking."

¶19    Smerker argues that Ostwalt violated his due process rights by improperly frustrating his ability to obtain an independent BAC test. He contends he clearly requested an independent test and Ostwalt impeded his ability to obtain such a test by telling him it would make no difference to the effect of his refusal to take the breath test. Smerker asserts that he believed the independent test would be of no use because he already had effectively refused the breath test and he did not understand his rights in the context of obtaining exculpatory evidence. He argues that Ostwalt had "an affirmative duty under [*State v. Strand* (1997), 286 Mont. 122, 951 P.2d 552] to ensure the defendant understands his rights with regard to an independent test."

¶20    In *Strand*, we held that "due process requires that the arresting officer inform the accused of his or her right to obtain an independent blood test, regardless of whether the accused consents to the test designated by the officer." *Strand*, 286 Mont. at 126, 951 P.2d at 554. Nowhere in *Strand*, however, did we state that the arresting officer must ensure that the accused understands all the nuances of what the right to an independent test entails. Here, Ostwalt clearly informed Smerker of his right to obtain an independent BAC test, thus fulfilling his obligation under *Strand*. Furthermore, the videotape reveals that Ostwalt told Smerker he was more than welcome to obtain a urine test at his own expense. There is no indication that Ostwalt in any way denied or impeded Smerker's ability to obtain such a test.

¶21 We conclude Smerker has failed to establish that Ostwalt unreasonably impeded his right to obtain an independent BAC test and, as a result, has failed to establish a violation of his due process rights. We hold, therefore, that the District Court did not err in denying Smerker's motion to dismiss based on a violation of his right to receive an independent examination of his BAC.

¶22 *2. Did the District Court abuse its discretion in denying Smerker's motion for a new trial based on attorney conflict of interest?*

¶23 After his arrest, Smerker retained Thomas J. Sheehy (Sheehy) as defense counsel. Sheehy represented Smerker throughout pretrial proceedings and during the trial. Following the trial, Smerker retained new counsel and moved the District Court for a new trial, arguing that Sheehy had rendered ineffective assistance of counsel because of a conflict of interest. Smerker alleged that a partner in Sheehy's law firm, Steve Gannon (Gannon), became a deputy Hill County Attorney during the pretrial phase of this case and that this affiliation resulted in a conflict for both Sheehy and the prosecutor, Hill County Attorney Cyndee L. Peterson (Peterson). In response to the motion, the State presented the District Court with Gannon's affidavit in which he stated that he had never discussed the merits or facts of the case with either Sheehy or Peterson and never worked on the case for either the prosecution or defense.

¶24 The District Court held a hearing, following which it entered its order denying the motion for a new trial on the basis that Smerker had failed to present legal authority or evidence establishing that an actual conflict of interest existed for either Sheehy or Peterson.

9

We review a district court's denial of a motion for a new trial to determine whether the court abused its discretion. *State v. Clark*, 2005 MT 330, ¶ 18, 330 Mont. 8, ¶ 18, 125 P.3d 1099, ¶ 18.

¶25 A criminal defendant's right to assistance of counsel is guaranteed under the Sixth Amendment to the United States Constitution and Article II, Section 42 of the Montana Constitution. *State v. Deschon*, 2002 MT 16, ¶ 17, 308 Mont. 175, ¶ 17, 40 P.3d 391, ¶ 17. The constitutional right to assistance of counsel includes both the right to reasonably competent counsel and the right to counsel's undivided loyalty. *Deschon*, ¶ 17. A defendant claiming ineffective assistance of counsel on the basis that counsel failed to provide undivided loyalty due to a conflict of interest must establish that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected counsel's performance. *Deschon*, ¶ 18. We observe that this test is stated in the conjunctive, thus requiring a defendant to establish both prongs. *See, e.g., Swan v. State*, 2006 MT 39, ¶ 25, 331 Mont. 188, ¶ 25, 130 P.3d 606, ¶ 25. Consequently, if either prong is not met, the conflict of interest claim fails. We conclude here that Smerker has failed to establish the second prong of the conflict of interest test.

¶26 Here, Smerker points to no evidence of record establishing that an actual conflict of interest existed for either Sheehy or Peterson. Rather, he merely asserts that Gannon's affiliation with both Sheehy's law firm and the Hill County Attorney's office resulted in a conflict of interest. Such conjecture does not meet Smerker's burden of establishing that an actual conflict of interest existed. Furthermore, in his brief on appeal, Smerker states that

10

"[a]lthough [he] cannot argue that either attorney did not do their job throughout the trial of this matter, justice warrants a new trial based upon the appearance of impropriety . . . ." Thus, Smerker tacitly concedes that the alleged conflict of interest did not "adversely affect counsel's performance." *See Deschon*, ¶ 18. Finally, we observe that Smerker's argument regarding the "appearance of impropriety" was not raised in the District Court. We will not address arguments on appeal which were not raised in the trial court and, therefore, we decline to further address Smerker's "appearance of impropriety" argument. *See State v. Clifford*, 2005 MT 219, ¶ 33, 328 Mont. 300, ¶ 33, 121 P.3d 489, ¶ 33; *State v. Gouras*, 2004 MT 329, ¶ 26, 324 Mont. 130, ¶ 26, 102 P.3d 27, ¶ 26.

¶27    We conclude that Smerker has not met the second prong of the test to establish ineffective assistance of counsel due to a conflict of interest. As a result, we hold that the District Court did not abuse its discretion in denying Smerker's motion for a new trial based on attorney conflict of interest.

¶28    *3. Was Smerker's constitutional right to due process violated when the District Court refused to rule on his motion to dismiss?*

¶29    Following the sentencing hearing, Smerker simultaneously filed his notice of appeal to this Court and a motion to dismiss the felony charge. His motion to dismiss alleged that two of his underlying misdemeanor DUI convictions were constitutionally invalid and could not be used to enhance the current charge to a felony. Smerker and the State each briefed the issue and submitted documents relating to the two misdemeanor convictions in support of their respective positions. The District Court subsequently declined to rule on the motion to

11

dismiss, concluding that Smerker's filing of his notice of appeal deprived the District Court of jurisdiction to address the issue. Approximately six months later, this Court remanded this case to the District Court for the sole purpose of allowing the District Court to enter its written judgment on the conviction and sentence. The District Court entered its written judgment, but did not address Smerker's motion to dismiss.

¶30 Smerker contends that the District Court violated his constitutional right to due process by refusing to rule on his motion to dismiss. He cites Rule 5(b), M.R.App.P., which provides that, in criminal cases, "[a] notice of appeal filed after the oral pronouncement of a decision or sentence but before the entry of the judgment is treated as filed on the day of and after the entry." He contends based on this rule that, although he filed his notice of appeal on the day of the sentencing hearing, the notice was not effective until the date on which the District Court subsequently entered its written judgment on the conviction and sentence. He asserts, therefore, that the District Court retained jurisdiction over the case during the time between the sentencing hearing and entry of the written judgment, and should have ruled on his motion to dismiss.

¶31 We conclude that we need not address whether the District Court retained jurisdiction to rule on Smerker's motion to dismiss, as the court's failure to address the motion was harmless in this instance. In an appeal of a criminal case, "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Section 46-20-701(2), MCA. We previously have stated that whether a prior conviction may be used to enhance the sentence on a subsequent offense is a question of law over which we have plenary review.

12

*State v. Jackson*, 2002 MT 212, ¶ 7, 311 Mont. 281, ¶ 7, 54 P.3d 990, ¶ 7. The term "plenary" is defined as "[c]omplete in all respects; unlimited or full . . . ." THE AMERICAN HERITAGE DICTIONARY 1348 (4th ed. 2000).

¶32 Furthermore, we observe that, in arguing their respective positions regarding the motion to dismiss, the parties submitted only documentary evidence in the form of Smerker's affidavit and documents relating to the justice court proceedings on the two 1996 DUI convictions at issue. With respect to documentary evidence, this Court is in as good a position as the District Court to judge the weight to be given to such evidence. *See Kills on Top v. State*, 2000 MT 340, ¶ 18, 303 Mont. 164, ¶ 18, 15 P.3d 422, ¶ 18. Neither party here requested the District Court to hold an evidentiary hearing on the motion to dismiss for the purpose of presenting witness testimony. Nor does either party request this Court to remand this case to give the District Court the opportunity to hear witness testimony. Rather, the parties request us to address the merits of whether the 1996 DUI convictions are constitutionally valid. In light of the unique procedural posture under which this case is presented, we determine that it is appropriate for us to do so.

¶33 Because Smerker raises on appeal the issue of whether his prior DUI convictions were constitutionally valid, resolution of that issue depends solely on documentary evidence and we exercise plenary review over the question of law regarding whether a prior conviction may be used to enhance the sentence on a subsequent offense, we conclude that the issue properly and adequately may be addressed by this Court on appeal. Consequently, the District Court's failure to rule on Smerker's motion to dismiss did not affect Smerker's

13

substantial rights. We hold, therefore, that Smerker's constitutional right to due process was not violated when the District Court refused to rule on his motion to dismiss.

¶34　*4. Should the felony DUI charge be dismissed because two of Smerker's prior DUI convictions were constitutionally invalid?*

¶35　The State charged Smerker with fourth offense DUI, a felony, based on its allegation that Smerker had three prior misdemeanor DUI convictions. According to the State, and as set forth in the PSI report, Smerker was convicted of one misdemeanor DUI *per se* on November 19, 2001, and he was convicted of two misdemeanor DUI *per se* offenses on July 29, 1996. Smerker contends that his two 1996 DUI convictions were constitutionally invalid and cannot be used to enhance his current offense to a felony. Specifically, he asserts that, although the written judgments relating to those convictions stated he pleaded guilty to the two offenses, he had never actually entered guilty pleas in those cases.

¶36　It is well-established that that the State may not use a constitutionally infirm prior conviction to enhance a subsequent offense to a felony. *State v. Snell*, 2004 MT 334, ¶ 25, 324 Mont. 173, ¶ 25, 103 P.3d 503, ¶ 25. However, prior convictions are presumed to be valid. *Snell*, ¶ 25. A defendant who challenges a prior conviction as constitutionally invalid must present direct evidence of irregularity in the prior proceeding. *Snell*, ¶ 25. If the defendant presents such direct evidence, the burden shifts to the State to prove by a preponderance of the evidence that the prior conviction was not obtained in violation of the defendant's rights. *Snell*, ¶ 25.

14

¶37 Smerker provided the District Court with his affidavit in support of his motion to dismiss the felony DUI charge. Smerker's affidavit reflects the following. On December 12, 1995, Smerker was charged in the Cascade County Justice Court (Justice Court) with one count of DUI. On April 1, 1996, he was charged under a second cause number in the same Justice Court with one count of DUI and one count of driving while license suspended. On May 7, 1996, Smerker appeared in Justice Court and pled guilty to the driving while license suspended charge; he did not plead guilty to either DUI count on that day. On July 29, 1996, he appeared before the Justice Court for what he believed to be a sentencing hearing on the driving while license suspended charge. Although he signed two unspecified documents on that day, he did not enter guilty pleas to the two DUI charges. The judgments entered by the Justice Court under the two cause numbers on July 29, 1996, indicate that Smerker pled guilty to two amended charges of DUI *per se* on May 7, 1996. The Justice Court judgments are incorrect, because he never actually changed his pleas to guilty, and "[n]o record can be found that [Smerker] entered a guilty plea on May 7, 1996 to the two pending DUI charges because it never happened."

¶38 Smerker's affidavit unequivocally states that, notwithstanding the Justice Court judgments, at no time did he enter guilty pleas to the two DUI charges in the Justice Court. These unequivocal statements constitute direct evidence of irregularity in the underlying Justice Court proceedings. *See State v. Howard*, 2002 MT 276, ¶ 13, 312 Mont. 359, ¶ 13, 59 P.3d 1075, ¶ 13. Consequently, the affidavit was sufficient to shift the burden to the State to

15

prove that the two 1996 DUI *per se* convictions were not obtained in violation of Smerker's rights.

¶39    In opposition to Smerker's motion to dismiss, the State provided the District Court with various documents from the 1996 Justice Court proceedings which the State contended established, contrary to Smerker's assertions, that he did enter guilty pleas to the two DUI charges and the convictions were valid. These documents include a plea bargain agreement dated May 7, 1996, signed by Smerker, Smerker's attorney and the prosecutor. The agreement referenced the two Justice Court cause numbers at issue and provided that the State would amend the two DUI charges to DUI *per se*. The agreement also provided that, in exchange for Smerker's guilty pleas to the amended DUI offenses and the driving while license suspended offense, the State would recommend a specified sentence. The State also submitted a Justice Court order entered under the two cause numbers and dated May 7, 1996. In this order, the Justice Court stated that Smerker

> appeared, acting freely, voluntarily, with no promise of reward, understanding sentencing is entirely up to the Court, signing waiver, entered a plea of guilty to 2 Counts DUI Per Se (amended from DUI), Violation of Section 61-8-406 and Driving While Suspended Violation of Section 61-6-151.

The order also set sentencing in the matter for July 29, 1996.

¶40    We conclude that the State has provided direct evidence, via the Justice Court's May 7, 1996, order, establishing that Smerker did plead guilty to the two DUI *per se* offenses at issue here on that date. Thus, we further conclude that the State has met its burden of establishing by a preponderance of the evidence that these two convictions were not obtained

16

in violation of Smerker's rights and are constitutionally valid. We hold, therefore, that the prior DUI convictions were constitutionally valid and were properly used—in conjunction with his 2001 conviction—to enhance Smerker's current DUI offense to a felony.

¶41 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ W. WILLIAM LEAPHART